RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 17-5580

*v.*

LARRY D. NICHOLS,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:04-cr-00068-1—Travis R. McDonough, District Judge.

Decided and Filed:  July 30, 2018

Before:  BATCHELDER and CLAY, Circuit Judges; SARGUS, Chief District Judge.[*]

───────────────

## COUNSEL

**ON BRIEF:**  Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Steven S. Neff, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

CLAY, J., delivered the opinion of the court in which SARGUS, D.J., joined.  BATCHELDER, J. (pp. 12–23), delivered a separate dissenting opinion.

───────────────

[*]The Honorable Edmund A. Sargus, Jr., Chief United States District Judge for the Southern District of Ohio, sitting by designation.

---

**OPINION**

---

CLAY, Circuit Judge.  Defendant Larry D. Nichols appeals from a corrected sentence entered by the district court in an amended judgment pursuant to 28 U.S.C. § 2255.[1]  For the reasons that follow, we **VACATE** Defendant's corrected sentence and **REMAND** with instructions for Defendant to be sentenced in a manner consistent with this opinion.

## BACKGROUND

In 2004, Defendant was convicted for felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), (e).  The statutory maximum sentence for that offense is ten years' imprisonment.  *See* § 924(a)(2).  However, the district court found that Defendant qualified as an armed career criminal under the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  The ACCA overrode the ten-year statutory maximum for Defendant's conviction, instead requiring that the district court sentence Defendant to a minimum of fifteen years' imprisonment.  *See* § 924(e)(1).  The district court sentenced Defendant to a term of 288 months' imprisonment, or 24 years.

While in prison, Defendant was convicted and sentenced for conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(C); possession of heroin by an inmate, in violation of 18 U.S.C. § 1791(d)(1)(C); and conspiracy, in violation of 18 U.S.C. § 371.  The district court sentenced Defendant to an additional 151 months' imprisonment, to be served consecutively to Defendant's existing 24-year term of imprisonment for the firearm offense.

In 2015, the Supreme Court invalidated the ACCA's residual clause as unconstitutionally vague.  *Johnson v. United States*, 135 S. Ct. 2551 (2015).  The Supreme Court later held that the *Johnson* rule applies retroactively, *Welch v. United States*, 136 S. Ct. 1257 (2016), thereby permitting Defendant to challenge his enhanced sentence under the ACCA.  Defendant then filed

---

[1]The district court issued a single order that granted a § 2255 motion in Nichols' civil proceeding and imposed a corrected sentence in Nichols' criminal proceeding.  Because Nichols challenges only his corrected sentence in this appeal, we refer to him as Defendant in this opinion.

a motion under 18 U.S.C. § 2255 in which he requested resentencing. The district court found Defendant's motion to be meritorious, but rather than conducting a full resentencing proceeding, the district court elected to correct Defendant's sentence by issuing a memorandum opinion and order.

By the time the district court entered Defendant's corrected sentence, Defendant had already served twelve years in prison—two years in excess of the ten-year statutory maximum for his firearm offense. The Guidelines range for Defendant's conduct, absent the ACCA enhancement, was 51 to 63 months' imprisonment, which is well below the statutory maximum of ten years. Based on his belief that a period of over-incarceration can be calculated and credited toward the completion of a consecutive sentence, Defendant asked the district court to impose a Guidelines-range sentence and, in any event, to impose a sentence of a specific term of months. The district court denied Defendant's request and instead imposed a corrected sentence of "time served," which was equivalent to a term of about twelve years' imprisonment. (R. 52 at PageID #347.) Defendant requested reconsideration, which the district court denied. Defendant then filed this timely appeal.

## DISCUSSION

On appeal, Defendant argues that his sentence of "time served" exceeds the statutory maximum and that the sentence is unreasonable, regardless of its legality. We address each issue in turn.

A.      **Legality of Defendant's Sentence**

District courts have broad discretion when making sentencing decisions. *Gall v. United States*, 552 U.S. 38, 46 (2007). Indeed, this Court must give due deference to a district court's sentencing decision, even when that decision results in a sentence that is outside the recommended Guidelines range. *Id.* at 51, 59. But a district court's discretion has a firm boundary in that each sentence must be "within statutory limits." *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000). A sentence that exceeds the statutory maximum violates "constitutional protections of surpassing importance," including "the proscription of any deprivation of liberty without 'due process of law.'" *Id.* at 476–77. "Elementary notions of

fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996). Thus, although we must give due deference to sentencing decisions that fall within statutory bounds, we must also vacate any sentence that falls outside statutory bounds—even when the issue is not raised by prisoners themselves. *See United States v. Graham*, 275 F.3d 490, 522 (6th Cir. 2001) ("Both the Supreme Court and this circuit have found *sua sponte* consideration of plain error to be appropriate to remedy unlawful sentences imposed by the district court."). As the Tenth Circuit recently explained, "illegal sentences 'trigger per se, reversible, plain error.'" *United States v. Titties*, 852 F.3d 1257, 1275 (10th Cir. 2017).

In this case, Defendant's corrected sentence must be vacated. The district court imposed a sentence of "time served" based on Defendant's violation of 18 U.S.C. § 922(g), which carries a statutory maximum sentence of ten years' imprisonment. § 924(a)(2). Under the circumstances of this case, a sentence of "time served" equates to a term of about twelve years' imprisonment. Because the district court had no authority to impose a sentence of more than ten years' imprisonment, the court erred when it imposed Defendant's corrected sentence. *See* § 924(a)(2); *Graham*, 275 F.3d at 522.

In support of its decision to impose a sentence exceeding the statutory maximum, the district court cited a "standard procedure" calling for the "impos[ition of] a corrected term of 'time served' where a petitioner entitled to *Johnson*-based collateral relief has already served in excess of the 120-month statutory maximum applicable to non-ACCA offenders under 18 U.S.C. § 924(a)(2)." (R. 59 at PageID #396.) However, all of the cases cited by the district court in support of this procedure involved prisoners who were eligible for immediate release following the correction of their sentences to "time served." *See Hayes v. United States*, No. 4:16 CV 926 CDP, 2016 WL 4206028, at *3 (E.D. Mo. Aug. 10, 2016) (imposing corrected sentence of "time served," resulting in defendant's immediate release); *McBee v. United States*, No. 4:06-CR-17-HSM-SKL-1, 2016 WL 3962996, at *3 (E.D. Tenn. July 21, 2016) (granting expedited motion to modify sentence and giving Bureau of Prisons 10 days "to process Petitioner's release"); *Hadley v. United States*, No. 102CR147TRMSKL1, 2016 WL 3746567, at *3 (E.D. Tenn. July 7, 2016)

(same); *Phillips v. United States*, No. 216CV02288JPMCGC, 2016 WL 3039990, at \*4 (W.D. Tenn. May 27, 2016) (same); *United States v. Husbands*, No. 4:01CR77/MCR/GRJ, 2016 WL 3702676, at \*1 (N.D. Fla. July 12, 2016) (modifying sentence to "time served," resulting in defendant's immediate eligibility for release); *Cox v. United States*, No. 3:05-CR-74-RJC-CH-1, 2016 WL 3514454, at \*3 (W.D.N.C. June 27, 2016) (modifying defendant's sentence to "time served" and ordering "immediate release from custody); *United States v. Lillard*, No. 8:02CR374, 2016 WL 3033703, at \*1 (D. Neb. May 26, 2016) (modifying sentence to "time served" and concluding "it is in the interests of justice to release the defendant"). Therefore, these prisoners had no reason to challenge their corrected sentences as unlawful, and doing so may have only prolonged their confinement.

By contrast, the modification of Defendant's sentence to "time served" did not result in Defendant becoming eligible for immediate release; Defendant will not be eligible for release until he completes his consecutive sentence for the conviction he received while incarcerated. Defendant would like to argue that his period of over-incarceration should be applied toward the latter sentence. The district court found that Defendant should not be permitted to obtain such an outcome, offering its opinion that "[a]voiding the creation of such 'time banks' makes complete sense as a matter of sentencing policy." (R. 59 at PageID #397 n.2.) But that issue was not before the district court. As the government now admits, "[t]his is *not* a case in which the district court had 'jurisdiction and authority to reevaluate the entire aggregate sentence' because the original sentence had been deemed a unified 'packaged' or interdependent 'components of a single comprehensive sentencing plan.'" (Gov. Br. 11–12 (emphasis original) (citing *Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997).) Rather, the only issue before the district court—and now before this Court—is how to bring Defendant's sentence for the violation of § 922(g) into compliance with the law. Regardless of its opinion about sentencing policy, the district court could not lawfully impose a sentence of more than ten years' imprisonment. *See Apprendi*, 530 U.S. at 481; *BMW*, 517 U.S. at 574. The court therefore erred when it entered a sentence of "time served" where "time served" equated to a term in excess of the statutory maximum sentence.

The government argues that the district court committed no error—or that the district court's error was inconsequential—because "[a] district court cannot actually turn back the clock to reduce the number of months a defendant has already spent in custody," and therefore "'correcting' a sentence to a term of months less than the number of months already served by a defendant amounts to a legal fiction." (Gov. Br. 8.) But there is nothing fictional about the deprivation of liberty associated with over-incarceration. *See Pollard v. United States*, 352 U.S. 354, 358 (1957) (allowing a defendant who had already served his time to challenge the length of his sentence due to the "possibility of consequences collateral to the imposition of [the] sentence"). Once Defendant completed his sentence for the violation of § 922(g), which he did after no more than ten years in prison, the government had no authority to continue to confine him for that offense. The only legal fiction in these circumstances is the district court's use of "time served" as equivalent to "twelve years' imprisonment." A sentence in excess of the statutory maximum is unlawful, regardless of how it is disguised and regardless of the amount of time the defendant has already served. *See Apprendi*, 530 U.S. at 481; *Graham*, 275 F.3d at 522; *Titties*, 852 F.3d at 1275.

Meanwhile, the dissent picks up the torch of the lone dissent in *Welch*, lamenting the "steep price" of correcting unconstitutional sentences. From the dissent's point of view, we should not "years later pretend that it [the sentence] was actually illegal from the start" because "at all times prior to *Welch*, [Defendant] was incarcerated lawfully under a sentence mandated by Congress." The Supreme Court has twice explained the flaw in this premise. In *Johnson*, the Supreme Court explained that the residual clause—the supposed "mandate" to which the dissent refers—is invalid. *Johnson*, 135 S. Ct. at 2560. Writing for the majority, Justice Scalia explained that the residual clause is too "shapeless a provision to condemn someone to prison for 15 years to life" and that the clause therefore "does not comport with the Constitution's guarantee of due process." *Id.* Then, in *Welch*, the Supreme Court explained that the vagueness of the residual clause meant that *every* sentence previously entered pursuant to it was invalid because "a court lacks the power to exact a penalty that has not been authorized by any valid criminal statute." *Welch*, 136 S. Ct. at 1268. The dissent's observation that Defendant was "incarcerated lawfully" therefore misses the mark. Just as it "is objectively unlawful and outside the scope of Presidential authority" to order the "forcible relocation of U.S. citizens to concentration camps,

solely and explicitly on the basis of race," *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018), it is beyond the authority of Congress to order the imprisonment of citizens based on a "wide-ranging inquiry" that "both denies fair notice to defendants and invites arbitrary enforcement by judges," *Johnson*, 135 S. Ct. at 2557. When a governmental action is unconstitutional, Congressional authorization is irrelevant.

This analysis is unchanged by the dissent's parade of horribles. The dissent asks, for instance, "[h]ow many corrected sentences will be now per se reversible plain error?" And, "[h]ow many inmates, like Nichols, will discover that they have long been unlawfully incarcerated, and what will be the effect of that discovery?" The dissent, it seems, would like to pretend that inmates like Defendant were never subjected to unconstitutional sentences—that the residual clause suddenly *became* vague as the Supreme Court penned *Johnson* rather than being unconstitutionally vague all along. On this premise, the dissent proposes that "*Welch* stops the sentence when the district court grants the § 2255, whereupon the 15-year minimum *no longer* applies and the 10-year maximum immediately *begins to apply*, with the result that *Welch*'s retroactivity allows the district court to apply *Johnson* to correct the sentences that were imposed prior to *Johnson*, but does not empower the district court to change any sentences that were served prior to the award of the § 2255." This paradigm might be administratively convenient for the courts, but it ignores the constitutional underpinnings of *Johnson* and *Welch*.

The dissent then muddies the waters by raising a "concern" about the applicable standard of review. The dissent suggests that Defendant "is merely challenging the district court's discretionary choice of relief under § 2255" and that "[u]nder an abuse-of-discretion standard, . . . the majority would likely agree to affirm the district court." But Defendant's appeal has little to do with § 2255 or with the abuse-of-discretion standard. In the district court, Defendant filed a § 2255 motion, which the district court correctly granted. The district court then had discretion to grant relief to Defendant in one of four forms: discharge him, resentence him, grant him a new trial, or correct his sentence. 28 U.S.C. § 2255(b). Defendant does not challenge the district court's choice to correct his sentence rather than to, for instance, grant a new trial. Rather, Defendant challenges the correctness of his corrected sentence. Because the district court had no

discretion to impose an unconstitutional sentence, the dissent's hypothetical inquiry into whether the district court abused its discretion is nonsensical.

Finally, the dissent complains that today's decision conflicts with two unpublished cases. The first of these cases, *United States v. Watkins*, 692 F. App'x 307, 308 (8th Cir. 2017), is not even from this circuit, and the dissent admits that "its analysis is cursory, almost conclusory." The second of these cases, *United States v. Perotti*, 702 F. App'x 322 (6th Cir. 2017), supposedly stands for the proposition that a sentence is *per se* unreviewable once it is corrected to "time served" because the termination of the prisoner's confinement moots any potential challenge. As an unpublished case, *Perotti* is not binding on this panel. Moreover, *Perotti*'s supposed rule flatly contradicts the Supreme Court's holding in *Pollard*. *See Pollard*, 352 U.S. at 358. To the extent that *Perotti* is inconsistent with *Pollard*, it is not—and never was—good law.

**B.     Reasonableness of Defendant's Sentence**

Defendant also argues that his sentence must be vacated for the independent reason that it is unreasonable. Before addressing the merits of this argument, however, we must decide a threshold question of first impression in this Circuit: whether corrected sentences are subject to reasonableness review. We conclude that they are. We have previously explained, without limitation, that we "review sentences for reasonableness." *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006); *see also United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008) ("We review sentences imposed by the district court for reasonableness."). The Supreme Court's guidance on this issue is similarly sweeping. *See Rita v. United States*, 551 U.S. 338, 341 (2007) ("The federal courts of appeals review federal sentences and set aside those they find 'unreasonable.'"). Moreover, although § 2255(b) gives the district court "wide berth in choosing the proper scope of post-2255 proceedings," *Ajan v. United States*, 731 F.3d 629, 633 (6th Cir. 2013) (quoting *United States v. Jones*, 114 F.3d 896, 897 (9th Cir. 1997)), and permits the district court to grant relief in a form that "may appear appropriate," *id.* (quoting § 2255(b)), the statute does not purport to override the reasonableness standard of review. The government provides no argument to the contrary. We therefore review Defendant's corrected sentence for reasonableness.

Reasonableness review requires that each sentence be both procedurally and substantively reasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence is procedurally unreasonable if the district court "fail[s] to calculate (or improperly calculate[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* Meanwhile, "a sentence may be substantively unreasonable where the district court 'selects the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor.'" *United States v. Moon*, 513 F.3d 527, 543 (6th Cir. 2008) (quoting *Collington*, 461 F.3d at 808).

Applying this standard, we find the district court's order to be a plainly inadequate foundation for Defendant's sentence. After finding that Defendant does not qualify as an armed career criminal and that Defendant's original sentence was therefore unlawful, the district court's order states the following:

> For purpose of the current case, the Court finds correction of Petitioner's sentence to be the most appropriate form of relief. Despite this, Petitioner is not entitled to immediate release, however, because he incurred an additional federal conviction while incarcerated for the instant offense. . . .
>
> Petitioner has already served twelve years in prison (Doc. 51, at 5), a total exceeding the ten-year custodial maximum applicable to him post-*Johnson*. As a result, his motion (Doc. 50) will be GRANTED and the term of imprisonment for the instant offense will be reduced to a "time served" sentence. The judgment dated December 14, 2004 (Doc. 28) will be AMENDED to reflect a term of supervised release of three years. The Clerk's Office will be DIRECTED to prepare an amended judgment in accordance herewith.

(R.52 at PageID #347 (citation omitted).) The order contains no analysis whatsoever in support of the corrected sentence. The correction to Defendant's sentence was the removal of an ACCA enhancement. Following this correction, Defendant's recommended Guidelines range was 51 to 63 months' imprisonment. The district court's order contains no reference to this Guidelines range, nor does it contain any acknowledgement that the length of the sentence imposed—twelve years—reflects a major departure from the recommended Guidelines range. This deficiency renders the sentence procedurally unreasonable because, on appellate review, we are unable to

determine whether the district court properly used the Guidelines as "the starting point and the initial benchmark" for the corrected sentence. *Gall*, 552 U.S. at 49. And to the extent that the district court selected the length of Defendant's sentence based on the length of time that Defendant had already served at the time his § 2255 motion was adjudicated, the sentence is also substantively unreasonable. *See Moon*, 513 F.3d at 543 (explaining that a sentence of arbitrary length is substantively unreasonable).

Moreover, the corrected sentence is procedurally unreasonable for the independent reason that the district court "fail[ed] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. Because the district court elected to correct Defendant's sentence rather than to conduct a *de novo* resentencing, the district court could properly rely on the explanation that the sentencing court originally provided in support of Defendant's sentence. *See Chavez-Meza v. United States*, 138 S. Ct. 1959, 1967 (2018) (explaining in the context of a sentence modification that the court "need not turn a blind eye to what the judge said at petitioner's initial sentencing"). But to the extent that Defendant's meritorious § 2255 motion rendered the original explanation insufficient "to allow for meaningful appellate review and to promote the perception of fair sentencing," *id.* at 50, the district court was obligated to supplement the original explanation. *Cf. United States v. Blackie*, 548 F.3d 395, 401–02 (6th Cir. 2008) (finding that a district court "plainly erred when it did not refer to the applicable Guidelines range and failed to provide its specific reasons for an upward departure or variance at the time of sentencing or in the written judgment and commitment order" (emphasis omitted)); *United States v. Penson*, 526 F.3d 331, 338 (6th Cir. 2008) (finding sentence unreasonable where district court "provided virtually no explanation giving insight into the reasons for the specific sentence given"). The district court's order in this case contains no reference to Defendant's original sentencing proceedings, no attempt to supplement those proceedings, and no independent explanation for the corrected sentence. The sentence therefore cannot survive reasonableness review and must be vacated.

The dissent disagrees, raising a strawman concern: requiring corrected sentences to satisfy reasonableness review effectively "merges 'corrected sentences' and 'resentencings'" under § 2255. Under today's decision, however, a court imposing a corrected sentence will have

discretion to impose a corrected sentence based on a brief order, a hearing that resembles a *de novo* sentencing proceeding, or anything in between. A court's discretion on this measure will be guided by the requirement that the corrected sentence be procedurally and substantively reasonable. If the court finds that the original sentencing court's calculations and explanations are irrelevant to the corrected sentence, then the court might find that it must enter an extensive, detailed order, or it might even hold a hearing. But this will not be necessary in every case. When the court imposes a corrected sentence that is largely consistent with the rationale of the original sentence, a *de novo* resentencing would be largely redundant and wasteful. Consequently, the dissent's fear that today's decision "effectively excise[s] the 'correct the sentence' option from § 2255(b)" is unfounded. District courts are surely competent to judge the extent to which they must supplement the record.

## CONCLUSION

We **VACATE** Defendant's corrected sentence and **REMAND** with instructions for Defendant to be sentenced in a manner consistent with this opinion.

———————————

**DISSENT**

———————————

ALICE M. BATCHELDER, Circuit Judge, dissenting.  The majority opinion, at least as I understand it, begins reasonably enough with the premise that when a district court grants § 2255 relief and corrects an inmate's sentence, based on retroactive application of *Johnson v. United States*, 576 U.S. --, 135 S. Ct. 2551 (2015), it must adhere to any newly applicable statutory sentencing mandates.  But the majority goes further than I would go, holding that a new time-served sentence necessarily equates to a term-of-months sentence of the number of months actually already served, that such a sentence is illegal if the number of months exceeds the newly applicable statutory maximum, and that such an illegal sentence is per se reversible plain error.  The majority also holds that the court must conduct a full resentencing sufficient for reasonableness review.  Because I see so much of this differently, I must respectfully dissent.

**I.**

The problem here—Nichols's corrected sentence—was a foreseeable consequence of *Welch v. United States*, 578 U.S. --, 136 S. Ct. 1257 (2016), which made *Johnson* retroactive,[1] albeit "at a steep price," *id.* at 1269 (Thomas, J., dissenting).  The *Welch* Court summarized:

> Before *Johnson*, the [Armed Career Criminal] Act applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause.  An offender in that situation faced 15 years to life in prison.  After *Johnson*, the same person engaging in the same conduct is no longer subject to the Act and faces at most 10 years in prison.

*Id.* at 1265.  When the district court set Nichols's original sentence in December 2004, "before *Johnson*," the Act applied and Nichols faced a 15-year statutory mandatory minimum sentence (and actually received a 24-year sentence).  Then the Supreme Court issued *Johnson* in July 2015, making Nichols "no longer subject to the Act" or its 15-year statutory mandatory minimum.  So when the district court imposed Nichols's corrected sentence in October 2016,

---

[1]In *Johnson*, 135 S. Ct. at 2563, the Court invalidated the "residual clause" of the Armed Career Criminal Act (ACCA or "Act"), 18 U.S.C. § 924(e), as unconstitutionally vague.

"after *Johnson*," Nichols faced "at most" a 10-year statutory maximum sentence. Of course, at that point, Nichols had already served over 12 years in prison (July 2004 to October 2016).**[2]**

Nichols is by no means unique. There are many federal inmates across the country, who are or soon will be seeking relief based on *Johnson/Welch*, and who fall into this same circumstance of having already served more than the newly applicable 10-year maximum. There are already 18 such cases in the U.S. District Courts in Tennessee, where this case arose.**[3]** In each case, the court issued a corrected sentence of "time served." *See, e.g.*, *Hammonds v. United States*, No. 2:05-CR-52, 2017 WL 3403429, at *4 (E.D. Tenn. Aug. 7, 2017) (collecting cases) (opining that "a large number of district courts across the country have been imposing 'time served' sentences upon petitioners entitled to *Johnson* relief who already had served time in excess of the statutory maximum applicable to them as non-armed career criminals"). In granting Nichols § 2255 relief, the district court here merely did likewise and corrected his sentence to time served, effectively ending the sentence for that offense as thus completed.

From Nichols's perspective, the district court's corrected sentence of time served was actually a de facto sentence of 12 years, meaning that the district court "illegally" sentenced him to a term that was two years more than the newly applied statutory maximum. Moreover, under this theory, once Nichols had completed 10 years in prison by July 2014, the government had no authority to continue to confine him for that offense. Thus, he insists that the court was at fault—or at least not free from fault—for his "unlawful incarceration" from July 2014 on.

---

**[2]**According to the docket, police arrested Nichols in July 2004, and he remained incarcerated. Presumably, the Bureau of Prisons began counting his incarceration at that time for purposes of his sentence.

**[3]***See Hill v. United States*, 2018 WL 358516 (W.D. Tenn. Jan. 10, 2018); *Riffey v. United States*, 2017 WL 3820957 (E.D. Tenn. Aug. 31, 2017); *Crowder v. United States*, 2017 WL 3668432 (E.D. Tenn. Aug. 24, 2017); *White v. United States*, 2017 WL 3496461 (W.D. Tenn. Aug. 15, 2017); *Forrest v. United States*, 2017 WL 3485010 (W.D. Tenn. Aug. 14, 2017); *Goodman v. United States*, 2017 WL 3468558 (W.D. Tenn. Aug. 11, 2017); *Rainwater v. United States*, 2017 WL 3446294 (W.D. Tenn. Aug. 10, 2017); *Hammonds v. United States*, 2017 WL 3403429 (E.D. Tenn. Aug. 7, 2017); *Driggans v. United States*, 2017 WL 3326750 (E.D. Tenn. Aug. 3, 2017); *Wilson v. United States*, 2017 WL 3261772 (E.D. Tenn. July 31, 2017); *Odoms v. United States*, 2017 WL 3261770 (E.D. Tenn. July 31, 2017); *Bearden v. United States*, 2017 WL 3172747 (W.D. Tenn. July 26, 2017); *Dotson v. United States*, 2017 WL 3165118 (E.D. Tenn. July 25, 2017); *Mitchell v. United States*, 257 F.Supp.3d 996 (W.D. Tenn. 2017); *Jackson v. United States*, 2016 WL 7168089 (E.D. Tenn. Dec. 8, 2016); *McBee v. United States*, 2016 WL 3962996 (E.D. Tenn. July 21, 2016); *Hadley*, 2016 WL 3746567; *Phillips v. United States*, 2016 WL 3039990 (W.D. Tenn. May 27, 2016). *See also United States v. Lee*, 2016 WL 4179292, at *2 (D. Hawai'i Aug. 4, 2016).

From the district court's perspective, however, until *Johnson* was decided in July 2015, the 15-year minimum was mandated by statute and not subject to judicial discretion. *See Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000) (recognizing that judicial discretion is limited to "imposing sentence *within statutory limits*"). As of July 2014 (or even July 2015 for that matter, given that *Welch* did not make *Johnson* retroactive until April 2016), the court had no authority to adjust Nichols's sentence, much less order him released. Nichols filed his § 2255 motion in September 2016, arguing that *Johnson* removed the mandatory minimum and *Welch* applied *Johnson* retroactively. The court granted the motion and corrected Nichols's sentence in October 2016. Had Nichols filed this motion in July 2014 (or July 2015 or even March 2016), the court could not have granted relief or adjusted the sentence—at all times prior to *Welch*, Nichols was *incarcerated lawfully* under a sentence mandated by Congress. Because the court could not have adjusted Nichols's sentence any sooner than it did,[4] Nichols's argument that he was "incarcerated unlawfully" or that the court was at fault is built on the fiction that even though the prison sentence was legal (and inalterable) while Nichols was actually serving it, we can now years later pretend that it was actually illegal from the start.

In short, Congress ordered the district court to imprison Nichols for at least 15 years and then, after 12 years, the Supreme Court held that the prior (congressional) order no longer applied and so forbade the district court from imprisoning Nichols for any longer than 10 years. Despite the obvious byproduct of this holding—that Nichols and many inmates like him would have already served more than the newly applied 10-year maximum—the Court did not provide specific instruction or guidance for addressing this scenario. When Nichols moved for relief based on this new command, the district court—like Lady Macbeth, recognizing that "What's done cannot be undone," *Macbeth*, Act 3, Sc. 2—acknowledged that Nichols had served more time than is now required to punish his offense, more than is now permitted in fact, and corrected Nichols's sentence to time served, immediately ending the punishment.

Nichols was not satisfied with this "correction," however, and wanted the district court to resentence him to a set term of months—preferably 51 to 63 months under a new advisory

---

[4]As a practical matter, the district court was not obliged to address Nichols's sentence until Nichols moved for some action. He did not do so until September 2016, at which point the court acted rather quickly.

guidelines calculation or, alternatively, to 120 months under the newly applicable statutory maximum—so that "[t]he time [Nichols] has served past 120 months can be credited to another case."  The district court's refusal led to this appeal.

The majority agrees with Nichols and holds that the district court's corrected sentence was illegal and its underlying decision unreasonable.  The majority's remand instructs the district court to perform a full resentencing so as to calculate a specific term of months, as Nichols requests, and provide sufficient explanation to permit a reasonableness review in a potential future appeal.  Because I have certain concerns or disagreements, I must respectfully dissent.

## II.

The first concern is the proper standard of review.  In his § 2255 motion, Nichols expressly requested a term-of-months sentence, saying: "Rather than a 'time served' sentence upon reversal, Mr. Nichols respectfully requests either a guideline sentence or a sentence that specifically assigns a number of months to serve."  The government supported § 2255 relief but offered that "the custodial portion of [Nichols's] sentence should be reduced to time served."  When the district court granted the motion eight days later it mistakenly thought that both parties wanted time served and did not address other possibilities, such as a specific term of months. *See Nichols v. United States*, No. 1:04-CR-68, 2016 WL 5921780, at *1 (E.D. Tenn. Oct. 11, 2016) (asserting that "both parties agree the sentence should be corrected to 'time served'").[5] Nichols filed a Rule 59(e) motion to reconsider, arguing that the court ruled before he had time to reply and reasserting his request for a term of months.  Specifically, he argued for a within-guidelines sentence of 51 to 63 months, or perhaps "a slight upward variance," but *argued against* a 120-month maximum sentence, saying:

> Without the unconstitutional sentencing enhancements of the Armed Career Criminal Act, Mr. Nichols' advisory guideline range should be 51 to 63 months incarceration. . . . A 120-month sentence would be double the high-end of Mr. Nichols' guideline range.  While Mr. Nichols' post-sentence behavior might warrant a sentence at the top of his appropriate guideline range, or even a slight

---

[5]According to the docket, Nichols filed his § 2255 motion on September 2, 2016; the government responded on October 3, 2016, and the court entered judgment on October 11, 2016.

upward variance, it does not justify such an upward departure/variance [to 120 months, which is] 57 months over the top of a guideline range of 51 to 63 months.

Mr. Nichols respectfully moves this Honorable Court to reconsider its imposition of a 'time served' sentence and instead impose a sentence consistent with Mr. Nichols' appropriate guideline range.

Consequently, the first time the district court confronted Nichols's term-of-months-versus-time-served argument, it did so under a Rule 59(e) motion in which Nichols argued strongly for a 51-to-63-month within-guidelines sentence, and just as emphatically argued against a time-served sentence or even a possible 120-month maximum sentence.

Ordinarily, we review the denial of a motion to alter or amend a judgment under Rule 59(e) for an abuse of discretion but, to the extent that the denial was based on an erroneous legal doctrine, we review it de novo. *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 569 (6th Cir. 2013) (citing *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007)). In one sense, Nichols is merely challenging the district court's discretionary choice of relief under § 2255. In the district court, Nichols did not cite any controlling legal authority for a within-guidelines sentence or against a time-served sentence.[6] Nor did Nichols provide the court with any compelling reason for his preferred sentence, other than his hope that the Bureau of Prisons would give him credit for his "over-incarceration" towards his pending, unrelated, consecutive sentence, by back-dating its beginning to the end of this sentence. The district court clearly anticipated an abuse-of-discretion standard in its ruling, explaining:

> [Nichols] hopes [to] creat[e] an identifiable period of over-incarceration that the Bureau of Prisons can credit toward his completion of the consecutive 151-month term of imprisonment imposed by the Western District of Virginia.
>
> In response, the United States . . . [argues that Nichols] has not identified any issue of law or fact previously overlooked and instead disputes the nature of the discretionary relief afforded. In addition to noting that courts have routinely imposed 'time served' sentences where the defendant served more than 120 months in custody, the United States argues that the requested alteration would confer an unwarranted windfall and improperly interfere with the sentencing authority of another district court. This [c]ourt agrees that [] it would not be appropriate to alter or amend [Nichols]'s 'time served' sentence.

---

[6]The government, on the other hand, cited numerous cases in which district courts had been imposing time-served sentences under similar circumstances. *See* fn. 3, *supra*.

> [Nichols] has not identified, and this court is unaware of, any authority that suggests it is an abuse of discretion for a district court to impose a corrected term of 'time served' where a petitioner entitled to *Johnson*-based collateral relief has already served in excess of the 120-month statutory maximum applicable to non-ACCA offenders under 18 U.S.C. § 924(a)(2).  To the contrary, numerous district courts have done just that.

Under an abuse-of-discretion standard, I believe the majority would likely agree to affirm the district court.

The majority, however, appears to find that the district court relied on "an erroneous legal doctrine," and reviews the judgment de novo.  *See Morris Aviation*, 536 F. App'x at 569.  The majority begins from the proposition that "[u]nder the circumstances of this case, a sentence of 'time served' equates to a term of about twelve years' imprisonment."  As already pointed out, this is based on the false premise that—even though the court's judgment ordering Nichols imprisoned was indisputably lawful (in fact, inalterable based on then-governing statute) when the court imposed it and for the entire 12 years Nichols was serving it—the majority can ex post facto declare the sentence and its authorizing judgment to have been illegal, thereby creating two "legal fictions": (1) that Nichols was over-incarcerated; and (2) that the district court is just *now* sentencing Nichols tabula rasa, as if he could serve some amount of time other than the 12 years he has already actually served.  Thus, the majority holds that the time-served sentence "equate[s] to a term in excess of the statutory maximum sentence," that sentences in excess of the statutory maximum are illegal, *Apprendi*, 530 U.S. at 481, and that "illegal sentences trigger per se, reversible plain error."  Put another way, the majority rests its de novo review, and its ultimate decision, on a purported "legal doctrine": when determination of a statute's unconstitutionality is made retroactive, the past actions taken under that statute are also retroactively unlawful—a result which, if true, would surely confer upon the victim (here, the inmate) the right to a remedy for having suffered that unlawful act.

The merit of this "legal doctrine" is questionable.  *See, e.g.*, *Davis v. United States*, 564 U.S. 229, 243 (2011) ("Retroactive application does not, however, determine what 'appropriate remedy' (if any) the defendant should obtain."); *Montgomery v. Louisiana*, 577 U.S. --, 136 S. Ct. 718, 736 (2016) (declaring that *Miller v. Alabama*, 567 U.S. --, 132 S. Ct. 2455 (2012), which held life-without-parole sentences for juveniles to be unconstitutional, is

retroactive but conceding that "[a] State may remedy [such] violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them"). But if it is proper to frame the issue here as a challenge to an "erroneous legal doctrine," then that alone would be sufficient to justify the majority's de novo review, regardless of the merit of that legal doctrine.

## III.

The next concern is the potential for mootness. In *United States v. Perotti*, 702 F. App'x 322, 322-23 (6th Cir. 2017), cert. denied, 138 S. Ct. 1280 (2018), the district court granted John Perotti § 2255 relief based on *Johnson/Welch*, and imposed a corrected sentence of time served—"Perotti had served nearly twelve years in federal custody [and] was then taken into state custody where he remains." On appeal, Perotti argued that the time-served sentence equated to a term of nearly 12 years, which exceeded the newly applicable 10-year statutory maximum, meaning the sentence was illegal on its face and the court must instead calculate a term-of-months sentence based on the guidelines and § 3553 factors.

We dismissed Perotti's appeal, finding that Perotti was "challenging only the part of his sentence he ha[d] already completed," which meant that he lacked a live case or controversy necessary to give us appellate jurisdiction and, therefore, "Perotti's challenge to his sentence was mooted when he was released from federal custody." *Id*. at 323. We recognized that Perotti did remain incarcerated, despite the § 2255 relief, but explained that "Perotti's current imprisonment is the result of a violation of . . . a state charge that is not before us." *Id*. at 325.

Pursuant to *Perotti*, Nichols's appeal would also be moot. The only difference is that Perotti was subsequently incarcerated under a judgment from a state court while Nichols was subsequently incarcerated under a judgment from a *different* federal court, namely the U.S. District Court for the Western District of Virginia. *Nichols*, 2016 WL 5921780, at *4 n.2. For our purposes, however, this difference is not material, as we have no authority to meddle in a sentence from either. "Jurisdiction lies only in 'the court which imposed the sentence,'" *United States v. Condit*, 621 F.2d 1096, 1097 (10th Cir. 1980) (quoting § 2255(a)); "[a]ny other district

court lacks jurisdiction," *United States v. Cordova-Ordaz,* 637 F. App'x 523, 524 (10th Cir. 2016). *See also Northrop v. Quintana*, 418 F. App'x 73, 74 n.1 (3d Cir. 2011).

For our purposes, the district court's time-served sentence ended Nichols's incarceration under any sentence for which we had jurisdiction, just as if he had been released from custody. This continuing federal custody is an insufficient basis upon which to distinguish either *Perotti* or any of the district court opinions imposing time-served sentences on inmates such as Nichols.

**IV.**

The next concern is that every "corrected" sentence will henceforth require a full "resentencing," as the majority orders here. The law until now had been that "Section 2255 gives district judges wide berth in choosing the proper scope of post-2255 proceedings." *Ajan v. United States*, 731 F.3d 629, 633 (6th Cir. 2013) (quotation marks and citation omitted); *see also United States v. Jones*, 114 F.3d 896, 897 (9th Cir. 1997) ("While [the court] was permitted [after § 2255] to consider all aspects of the sentence, [it] was not required to do so."); *Stapleton v. United States*, 886 F. Supp. 2d 542, 545 (E.D. Va. 2012) ("[T]he district court is authorized to conduct a resentencing in awarding relief pursuant to § 2255 but is not required to do so."). But here the majority vacated the corrected sentence because it was not a full resentencing sufficient for a reasonableness review, in that the district court did not revisit the original sentencing proceedings, attempt to supplement those proceedings, or give any independent explanation.

Recall that the district court thought, albeit mistakenly, that both parties were requesting a time-served sentence. It is not surprising, then, that the court identified and relied on the only fact pertinent to that misapprehension: that, given the newly applicable 10-year statutory maximum, *any* sentence the court might calculate under any sentencing considerations—past, present, or future—would be less than Nichols had already served. *Nichols*, 2016 WL 5921780, at *4 ("[Nichols] has already served twelve years in prison, a total exceeding the ten-year custodial maximum applicable to him post-*Johnson*. As a result, . . . the term of imprisonment for the instant offense will be reduced to a 'time served' sentence."). Rather than being unexplained (or inexplicable), the basis for this corrected sentence is self-evident; and rather than being per se unreasonable, this is the approach district courts are commonly taking in resolving

these motions based on *Johnson/Welch*. *See*, *e.g.*, *United States v. Lee*, No. 16-cv-70, 2016 WL 4179292, at *2 (D. Hawai'i Aug. 4, 2016) (holding that "a de novo resentencing is unnecessary" because "an Amended Judgment with a 'time served' sentence appropriately 'corrects' [Lee]'s original sentence by removing the ACCA enhancement from the original Judgment").

To be sure, the district court could proceed on what I earlier described as the second "legal fiction" and calculate a hypothetical sentence as if Nichols could serve some sentence less than the 12 years he has already served. And we could review that hypothetical sentence for reasonableness, even though it is not connected to Nichols's actual incarceration or the amount of time he actually served for that particular conviction. And we could pretend that is not merely advisory. But this strays from the point, which is whether all of this is really necessary.

The majority merges "corrected sentences" and "resentencings" on the premise that full sentencing proceedings are necessary for a reasonableness review, which we must perform on all sentences, "without limitation." When courts have told us how to review sentencings, they have not differentiated between corrected sentences and full resentencings (or offered a different way to review corrected sentences), so, the majority reasons, the district court must conduct all sentencings the same way and, consequently, corrected sentences and full resentencing are de facto the same thing—both are just resentencings. But § 2255 expressly makes them *different* things.

Under § 2255(b), if the district court finds that the inmate is entitled to relief, "the court shall vacate and set the judgment aside and shall [1] discharge the prisoner or [2] resentence him or [3] grant a new trial or [4] correct the sentence." These are four separate alternatives. *Ajan*, 731 F.3d at 633 (explaining that "§ 2255 permits the district court to grant relief in one of four forms 'as may appear appropriate' when a motion is found to be meritorious" (quoting § 2255(b)). More to the point, "correcting" and "resentencing" must be different things. *See United States v. Hadden*, 475 F.3d 652, 667 (4th Cir. 2007) ("It is equally clear that by using the different terms—"correct" and "resentence"—§ 2255 refers to different concepts.").

Because "correcting sentences" and "resentencings" are different things, it follows that our appellate review of them, while still for "reasonableness," is different also, even though

opinions have not addressed this difference when instructing us on the method of review. A corrected sentence—particularly from a reasonable original sentence with only a slight correction—might be found reasonable on review even without a full rendition of the guidelines calculations or explanation of the factors. To hold otherwise, as the majority does, is to hold that "correcting" and "resentencing" are the same thing and effectively excise the "correct the sentence" option from § 2255(b). The majority's proffered reasons do not justify that.

**V.**

The next concern is the Eighth Circuit's conflicting opinion. In *United States v. Watkins*, 692 F. App'x 307, 308 (8th Cir. 2017), the district court granted Robert Watkins § 2255 relief based on *Johnson/Welch* and imposed a corrected sentence of time served—"Watkins had served more than ten years of a fifteen-year sentence." On appeal, Watkins argued that "the imposed sentence [was] illegal . . . because it exceed[ed] the maximum penalty allowed by law for this conviction; the newly calculated maximum penalty was ten years and Watkins had already served well past that in prison." *Id*. at 309. The Eighth Circuit rejected Watkins's arguments about the effect of the time-served sentence on future sentencing or supervised release and held that "[t]he imposition of a 'time served' sentenced was not erroneous." *Id.*

*Watkins* is unreported and its analysis is cursory, almost conclusory, but its holding directly contradicts the majority's holding here that a time-served sentence necessarily equates to a term of months and when that term of months exceeds the statutory maximum, the sentence is illegal and constitutes per se reversible plain error. Even without endorsing the Eight Circuit's opinion, one can see that the majority might have gone too far.

**VI.**

Finally, I question the merit of the majority's proffered legal doctrine that holds, in three parts: (1) that a time-served sentence equates to a term-of-months sentence in the number of months actually served; (2) that the sentence is illegal when that post hoc term of months exceeds the newly applicable statutory maximum (or, broadly stated, actions that were taken pursuant to a statute are ex post facto unlawful when the statute is retroactively unconstitutional); and (3) the resulting illegal sentence is per se reversible plain error. So, again, as applied here:

any corrected sentence of time served for an inmate who has already served more than the newly applicable 10-year maximum is per se reversible plain error.  Moreover, the inmate must receive a full resentencing sufficient for reasonableness review.

Given the breadth of this holding and the vast number of sentences to which it might henceforth apply, this opinion will doubtless have consequences, foreseeable and unforeseen. How many corrected sentences will now be per se reversible plain error?  How many inmates, like Nichols, will discover that they have long been unlawfully incarcerated, and what will be the effect of that discovery?  Will they, like Nichols, pursue a time bank or offset?  Or will they seek compensation for that newly discovered unlawful incarceration?   What of an inmate who suffered an injury, committed a crime, or unsuccessfully demanded special accommodations while so incarcerated—how does the calculus change when it is later declared via post hoc stipulation that the inmate was only in prison because he was being held unlawfully?

Rather than holding that the corrected sentence of time served necessarily equates to a term of years equal to the amount of time already served and invoking the legal fictions and consequences that follow, we might be better served by viewing a "time-served sentence" as different in kind from a "term of years sentence," either of which could satisfy the district court's discretionary choice of relief under § 2255.  That is, of course, an entirely different analysis from the one the majority has undertaken here, though compatible with the approach taken by the district courts that have been resolving § 2255 motions based on *Johnson/Welch*.

Or, upon recognizing that "[a]fter *Johnson*, the same person engaging in the same conduct is *no longer* subject to the Act," *Welch*, 136 S. Ct. at 1265 (emphasis added), we could emphasize the "no longer" to hold that: after *Johnson*, the inmate is *no longer* subject to the 15-year mandatory minimum, though he remained subject to it right up until *Johnson* (actually, until he obtains his § 2255 relief based on *Johnson/Welch*), and only *at that point* became eligible for the 10-year statutory maximum.  That is, *Welch* stops the sentence when the district court grants the § 2255, whereupon the 15-year minimum *no longer* applies and the 10-year maximum immediately *begins to apply*, with the result that *Welch*'s retroactivity allows the district court to apply *Johnson* to correct sentences that were imposed prior to *Johnson*, but does not empower the district court to change any sentences that were served prior to the award of the § 2255 relief.

For example, when the district court granted Nichols's § 2255 relief in October 2016, Nichols had already served 147 months of his original 288-month sentence. At that specific point, the Act *no longer* applied, meaning Nichols was no longer subject to the 15-year mandatory minimum and immediately became subject to the 10-year maximum, so the court was obliged to correct the sentence from that point on, to eliminate the portion remaining that was due to the Act's enhancement, which was all of it given that the Act's enhancement was the basis for every month above 120. That would result in an actual completed sentence of 147 months, which was lawful looking backwards, and a prospective sentence of zero months, which was lawful looking forward. This, of course, is the same as imposing a sentence of time served.

But the majority has taken a different approach. For all of the forgoing reasons, I cannot join its approach. Therefore, I must respectfully dissent.